**FRONTIER BROADCASTING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

Collier Electric Company, Intervenor.

**No. 16140.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 21, 1961.

Decided Oct. 19, 1961.

Mr. Alan Y. Naftalin, Washington, D. C., with whom Mr. Bernard Koteen, Washington, D. C., was on the brief, for appellant.

Mr. W. Hale Watkins, Counsel, Federal Communications Commission, of the bar of the Supreme Court of West Virginia, pro hac vice by special leave of court with whom Messrs. Max D. Paglin, Gen. Counsel, Federal Communications Commission and Daniel R. Ohlbaum, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. John P. Cole, Jr., Washington, D. C., for intervenor.

Before PRETTYMAN, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

A permit was issued on January 14, 1958 to Collier Electric Company to construct a common carrier point-to-point microwave radio relay system to bring television signals from television broadcast stations at Denver, Colorado, to community antenna television systems in Alliance and Scottsbluff, Nebraska, with transmissions from Antelope Hill, Nebraska. On May 7, 1958, Collier applied for modification of the permit, requesting authority to construct a 500 foot antenna tower in lieu of the 300 foot tower originally proposed, and to locate the station about a mile and a half southwest of the previously authorized site. Thereafter appellant, Frontier Broadcasting Company, licensee of television station KSTF in Scottsbluff, filed a request that the Commission revoke Collier's permit since it had proceeded to construct the facility in accordance with the pending but unapproved modification application rather than in compliance with the original permit which had been issued. Frontier asserted that this violated the following terms of section 319(a) of the Communications Act:

"No license shall be issued under the authority of this Act for the operation of any station the construction of which is begun or is continued after this Act takes effect, unless a permit for its construction has been granted by the Commission. * * * "[1]

On April 14, 1959, the Commission granted Collier's applications notwithstanding the premature construction, which the Commission found was unintended. Other objections presented by Frontier were also deemed to be without substance. Frontier sought no judicial review[2] of the Commission's action in granting Collier's modification application, and filed no protest[3] or petition for rehearing.[4] Collier thereupon completed construction of the proposed facilities as authorized by its permit.

In due course Collier filed for a license to cover transmissions to Alliance. This was granted on May 18, 1959, followed by the building of the microwave link to serve Alliance. Frontier attacked this grant and sought a hearing. It also requested revocation of the Scottsbluff permit, the link to which city had not been completed by Collier. Collier thereafter completed construction of this link, and on September 14, 1960 applied for a license to operate the Scottsbluff facilities. On September 16, 1960, this license was granted, without a hearing, by the Common Carrier Bureau of the Commission, under authority delegated to it by the Commission. Frontier then filed a "Protest, Petition for Reconsideration and Rehearing, and Application for Review of Delegated Staff Action." The

1. 48 Stat. 1089 (1934), as amended, 47 U.S.C. § 319(a) (1958), 47 U.S.C.A. § 319(a).

2. 66 Stat. 718 (1952), 47 U.S.C. § 402(b) (6) (1958), 47 U.S.C.A. § 402(b) (6).

3. 70 Stat. 3 (1956) (amended by 74 Stat. 889 (1960), as amended, 47 U.S.C. § 309 (c) (Supp. II, 1959–60)), 47 U.S.C.A. § 309(c).

The Communications Act Amendments of September 13, 1960, indicated supra, took effect subsequent to the decision and order of the Commission and therefore are not applicable to these proceedings.

4. 66 Stat. 720 (1952) (amended by 74 Stat. 892 (1960), as amended, 47 U.S.C. § 405 (Supp. II, 1959–60)), 47 U.S.C.A. § 405.

Commission, though finding Frontier had standing as a party in interest, denied relief to Frontier on November 30, 1960, in the Decision and Order now on appeal.

█ Frontier's principal contention is that the license received by Collier for the Scottsbluff link was illegally granted in violation of the terms of section 319 (a) above set forth. That provision, however, does not control; for at the licensing stage which had been reached by Collier with respect to the Scottsbluff link section 319(c) must be considered. See Columbia Broadcasting Sys. v. Federal Communications Comm., 93 U.S.App.D.C. 399, 402, 211 F.2d 644, 647, certiorari denied St. Louis Amusement Co. v. U. S., 348 U.S. 876, 75 S.Ct. 112, 99 L.Ed. 689. Section 319(c) provides in pertinent part,

> "upon the completion of any station for the construction or continued construction of which a permit has been granted, and upon it being made to appear to the Commission that all the terms, conditions, and obligations set forth in the application and permit have been fully met, and that no cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest,[5]"

the Commission shall issue a license to the lawful holder of the permit for the operation of the station.

██ The problem raised by Frontier regarding the premature construction undertaken by Collier before its modified construction permit was approved had been disposed of by the Commission on April 14, 1959, when the modified construction permit was granted. Since Frontier did not seek administrative or judicial review of this action of the Commission, the objection became

lost to Frontier as a basis for opposing the Commission's issuance of a covering license to Collier pursuant to section 319 (c). Section 319(c) of the Communications Act affords "a high degree of protection to holders of construction permits because the Commission can withhold the issuance of a license only in those cases where the facts and circumstances first coming to the knowledge of the Commission since the granting of a construction permit would, in the Commission's judgment, make the operation of such station against the public interest." Benton Broadcasting Serv., 9 P & F R.R. 586, 587–88 (1953). And see Columbia Broadcasting Sys. v. Federal Communications Comm., supra. As the Commission points out the premature construction relied upon by Frontier for its argument that a license could not validly be issued to Collier was not new matter which arose between the time the permit was granted and the time application for the license was filed. It predated the permit and was decided adversely to Frontier when the permit was granted. Review of that grant was available to Frontier but was not sought.[6] The matter thus was not a "cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit," and accordingly was not cause for denial of the license, action with respect to which became governed by the provisions of section 319(c). Columbia Broadcasting Sys. v. Federal Communications Comm., supra.

█ We have considered Frontier's other contentions and find no basis for disturbing the Decision and Order of the Commission. We mention the contention that Collier failed to demonstrate its common carrier status. As to this we think the Commission acted within its discretion in invoking section 21.709 of its Rules and Regulations.[7] Under this pro-

---

5. 66 Stat. 718 (1952) (amended by 74 Stat. 892 (1960), as amended, 47 U.S.C. § 319(c) (Supp. II, 1959–60)), 47 U.S. C.A. § 319(c).

6. WJIV–TV, Inc. v. Federal Communications Comm., 97 U.S.App.D.C. 391, 231 F. 2d 725, has no application to such a situation.

7. 47 C.F.R. § 21.709(a)–(c) (Supp.1961).

vision Collier's status as a common carrier is being reviewed in connection with its application for renewal of its license. Collier held itself out as prepared to serve the public. Its license expired February 1, 1961, and the Commission opinion now before us states that Collier would be held to compliance with the requirement of this section. It provides that a common carrier seeking renewal of a station license must make a factual showing that, during the preceding license period, the carrier's services have been used by a given percentage of subscribers not controlled by the applicant.[8]

Affirmed.