**In re Petition for Naturalization of Frederick Willard THOMPSON.**

**No. 323733.**

United States District Court
N. D. Illinois, E. D.
April 18, 1962.

Marshall Patner, Dixon, Morse, Knouff & Holmes, Chicago, Ill., for petitioner.

Irving I. Freedman, Immigration and Naturalization Service, U. S. Dept. of Justice, Chicago, Ill., for Immigration and Naturalization Service.

PERRY, District Judge.

This cause comes on to be heard upon the petition of Petitioner for naturalization before this court, objections thereto and full consideration of the record herein, and the court, being fully advised in the premises, finds the facts and states the conclusions of law as follows:

FINDINGS OF FACT

1. The petitioner is a native and national of Canada, 61 years of age, who

has resided continuously in the United States since his lawful admission for permanent residence March 27, 1922. (Tr. pp. 13, 14) His petition for naturalization was filed under the provisions of Section 310(b) of the Nationality Act of 1940 (8 U.S.C. § 710(b) [1]) on August 28, 1946.

2. The petitioner was a member of the Industrial Workers of the World from September 1922 to the present date. From 1936 through 1937, he served as General Secretary-Treasurer of the I.W. W., a position which entailed the responsibility of keeping the records and finances of the organization's general office. At a hearing before this court on July 12, 1961, petitioner testified that he was employed by the Industrial Worker as an editor of the Industrial Worker, a weekly newspaper which is the official organ of the Industrial Workers of the World, during the periods of the summer of 1936 and 1937 and from about July of 1946 to September of 1950. (Tr. pp. 21 and 75) From January 1923 to approximately 1950, the petitioner held the position of Job Delegate, an office in the Industrial Workers of the World which involved the initiation of members into the I.W.W. and the collecting of dues from such members. From May 1928 to April 1929 and from February 1933 to February 1934, and from sometime during 1934 through 1936, petitioner was a member of the General Executive Board of the Industrial Workers of the World. The function of the Executive Board was to handle all administrative matters between conventions of the Industrial Workers of the World, as well as the determination of organization policy and the determination of the official positions of the organization's official organ, the Industrial Worker, which was distributed throughout the United States. Petitioner was Branch Secretary in Cleveland, Ohio, during the period 1943 to 1945 and this position entailed keeping the books and records of dues of all members of that particular area, arranging for sessions of shop committees, the supervising of organizing efforts and the carrying out of all decrees issued by the Industrial Workers of the World. (Tr. p. 21) In addition, the petitioner was the editor of Industrial Solidarity, a weekly newspaper which was then the Eastern organ of the I.W.W. during the year 1930. He was also editor of the "One Big Union Monthly" during the period 1936 to 1937. This was a magazine published monthly by the General Executive Board of the International Workers of the World and distributed throughout the United States by the I.W.W. In addition, the petitioner was an instructor at the Work Peoples' College, a school which was controlled and operated by the Industrial Workers of the World, during various winters between 1929 and 1940. (Tr. pp. 22, 89 and 90)

3. In 1923, petitioner was arrested in Marysville, California, on the charge of criminal syndicalism of which he was found guilty and sentenced to 1 to 14 years, of which sentence he served three years and three months in the State Prison at San Quentin, California. He was granted a full and unconditional pardon for this offense by the Governor of California on December 23, 1940. In 1935, on three separate occasions, he was arrested in Cleveland, Ohio, while on picket lines and later released, and again was not charged with any offense. In 1932 he was arrested in Flint, Michigan, for distributing leaflets and was released without being charged with any offense. (Ex. A–3 and Ex. A–31 and Tr. pp. 57 to 67)

4. Petitioner testified that while he was editor of The Industrial Worker, he was the author of numerous editorials and articles appearing therein which were written either in his own name or under the pen names of Ernest Lachland, E.L., V. Jones, Henry Jones and X–33063. He also testified that he was the author of numerous articles appearing in publications of the Industrial Worker as well as a book on the history of the Industrial Workers of the World entitled "The I.W.

[1]. Now 8 U.S.C.A. § 1430.

W.—Its First 50 Years". He further testified that he agreed with the policies and views set forth in various issues of the Industrial Worker and other publications of the Industrial Workers of the World. (Tr. pp. 82 and 83)

5. The Industrial Workers of the World was formed in 1905 and has existed until the present date. During its early years the Industrial Workers of the World published a newspaper called Industrial Solidarity, which was later known as the Industrial Worker. In addition, the I.W.W. issued hundreds of pamphlets which were distributed and circulated throughout the United States. The constitution of the Industrial Workers of the World (Ex. A–20) was adopted in 1908 and continued to be in effect in its same form up until the present time. In effect the constitution stated that the working class and the employing class have nothing in common; that between these two classes a struggle must go on until the workers of the world organize as a class and abolish the wage system. It is further stated that "it is the historic mission of the working class to do away with capitalism." (Ex. A–20, p. 6) In discussing the methods by which capitalism can be overthrown, it should be noted that in the publication known as "The General Strike for Industrial Freedom" it is stated: "Realizing that control of industry can only come into the hands of the producing class when the producers have sufficient power to keep and to hold this control, the I.W.W. advocates the General Strike * * *." It is asserted therein that "the change from private to social ownership being inevitable, only thus can the danger of serious destruction and bloodshed be minimized." (Ex. A–25, p. 48)

6. Further means of attaining the objectives or aims of the Industrial Workers of the World is by the method of sabotage. In the Industrial Worker, dated March 27, 1913, it is stated that sabotage is advocated and that mass sabotage is a sign of solidarity. Sabotage is defined as the concerted withdrawal of efficiency by slowing down or other means. Furthermore, the same article stated that individual acts of sabotage, performed to the end that class benefit can be derived, can in no way militate against solidarity and that rather they promote unity. Examples of sabotage are quoted in the same article as follows: "Various cases of this capitalist sabotage might be quoted. Competitors to the Standard Oil Company often found that legal documents had been improperly executed for them. Rivals to the Sugar Trust had foreign materials introduced into their shipments, and in the fight of Havemeyer against Spreckels the latter's machinery had an accountable habit of getting out of order." The same article also stated: "No analysis of the labor movement is complete where sabotage is not accepted as a weapon * * *. *Should capitalism create an oligarchy to crush out all labor organization the attempt would be met by destructive sabotage.*" (Emphasis supplied) (Ex. A–13, p. 2)

7. The Industrial Workers of the World advocates the abolishment of government. An article in the Industrial Worker of January 4, 1952 states that "Government is the cancer of society and must be destroyed or else the working class of the world will be enslaved." (Ex. A–45) Although petitioner was no longer the editor of the Industrial Worker at the time of publication of this article, petitioner was a member of the organization which published and distributed it and the court views this article as part of a chain of evidence. Despite petitioner's testimony before this court regarding his present views on the abolishment of government, the court is of the opinion that based on all of the evidence petitioner adhered to and continued to adhere to the policies and views of the Industrial Workers of the World.

8. It should be noted that the principles, methods and program of the Industrial Workers of the World are the same today as they were when the organization was first founded in 1905. An editorial in the February 1, 1952 issue of the Industrial Worker stated that "its

I.W.W. principles, its methods, and its program apply today, just as they did when the organization was founded." (Ex. A–46) The petitioner wrote a book known as "One Big Union of All Workers" in which booklet sabotage is, in effect, advocated. Therein he stated that "it will cost you nothing and cost the company far more if you go to work and express your sorrow by the way in which you work * * *." (Ex. A–24) Vincent St. John, one of the earliest organizers of the Industrial Workers of the World and whose theory, principles and aims have been adopted by the I.W.W., stated in a pamphlet entitled "The Industrial Workers of the World—Its History, Structure and Methods" (Ex. A–4) that: "The Industrial Workers of the World uses any and all tactics that will get the results sought with the least expenditure of time and energy. The tactics used are determined solely by the power of the organization to make good in their use. The question of 'right' and 'wrong' does not concern us." In the same publication, in a discussion of I.W.W. tactics and methods, he said: "Failing to force concessions from the employers by the strike, work is resumed and 'sabotage' is used to force the employers to concede the demands of the workers * * * During strikes * * * interference by the government is resented by open violation of the government's orders * * *" Petitioner testified that Vincent St. John was "well thought of in the history of the organization" (I.W.W.). In testimony regarding his views on sabotage, the petitioner admitted he would be willing to perform "some" of the acts indicated in a definition of sabotage. (Tr. p. 115)

9. In the Industrial Worker of August 14, 1953, it is alleged that once the industries are seized by the Industrial Workers of the World the owners will not be compensated for their property in the accepted ways. In an issue of the Industrial Worker dated April 4, 1912, it is stated that the Industrial Workers of the World is "the one organization which believes in taking and holding the means of pro-

duction, peaceably if we can but forcibly if we must." The May 8, 1913 issue of the Industrial Worker stated that the Industrial Workers of the World oppose the institution of the State. The question of freedom of religion is discussed in the same issue. (Ex. A–16, p. 2) In the editorial section of the paper, it is stated: "The I.W.W., true to historic materialism as expressed in the words, 'The working class and the employing class have nothing in common,' finds its active membership either non-religious or anti-religious * * * The I.W.W. is creating its own ideas of morality and ethical conduct, as opposed to the current conceptions of what constitutes 'right' and 'wrong'." In an article of the Industrial Worker of May 15, 1913 (Ex. A–16, p. 2), with regard to compensation for the taking over of industry and property, it is stated: "We hold that the industries belong to the workers and that to pay the present owners would be the same as rewarding a thief after he has been forced to give up his loot. Any other proposition is simply soft soap to catch ignorant votes * * * The I.W.W. recognizes no paper titles to stolen property and the only thing we will give the capitalists for the industries is—a job." In the pamphlet entitled "On the Firing Line" (Ex. A–26, p. 46), published by the I.W.W., it is said: "It (I.W.W.) teaches no fallacy of a *legal* revolution * * *"

10. Throughout the articles and booklets issued by the Industrial Workers of the World the term "direct action" is used. The "Industrial Pioneer" in an article entitled "How the I.W.W. Is Organized" states: "The I.W.W. believes in, advocates and practices direct action. Direct action means the direct use of their economic power by the workers themselves—as in strikes—*as opposed to parliamentary action* by which the workers try to elect politicians to represent them in capitalist governments." (Emphasis supplied) (Ex. A–30, p. 21) In the Industrial Worker dated December 22, 1950, the Industrial Worker reiterates that its policies and aims and principles

are the same as when the organization was first begun. It is stated therein that "we believe one hundred per cent and all the way in the original principles of the Industrial Workers of the World." Again on February 1, 1952 it is stated in the same paper that "The Industrial Workers of the World's principles, its methods, and its program, apply today, just as they did when the organization was founded." (Ex. A–46) And on January 2, 1953 in another article in the Industrial Worker it is stated that " \* \* \* politics is the means by which the corporated (sic) interests keep us in slavery. We cannot win by the 'vote'." (Ex. A–50)

11. Petitioner has been a member of the Industrial Workers of the World since 1922. There is no doubt that the petitioner believes in and advocates the principles of the Industrial Workers of the World. The articles written by him while he was an editor of the I.W.W. newspaper and the pamphlets that he himself authored indicate that he believes in the principles and aims of the Industrial Workers of the World. The petitioner at one time during the hearing before this court stated that the views of the Industrial Workers of the World during a particular period did not represent his views. However, it appears that at no time did he ever appear before the members of the I.W.W., or in any articles or newspapers, ever disavow or disagree with the I.W.W.'s principles and aims. Petitioner's statement should not be accepted at face value. Even if true, the fact remains that the petitioner was a member of an organization which comes within the proscription of Section 313 (8 U.S.C.A. § 1424) of the Immigration and Nationality Act and is barred from naturalization.

12. There is no doubt from the testimony and evidence submitted at the hearing that the Industrial Workers of the World advocates the refusal to bear arms. Despite his testimony before this court, the court believes that the petitioner has adopted this principle and that his testimony shows that he would bear arms only upon such terms and conditions as he himself approved. Furthermore, the petitioner testified that in the event another country was controlled and operated by the Industrial Workers of the World he would find it "morally repugnant" to bear arms against that country. (Tr. p. 166)

The Court further makes the following specific findings of fact:

1. That petitioner has been a member of the Industrial Workers of the World from 1922 to the present date.

2. That the petitioner was a member of the Industrial Workers of the World ten years immediately preceding the filing of his petition for naturalization.

3. That petitioner believes in and advocates the principles of the Industrial Workers of the World.

4. That the petitioner believes in and advocates the abolishment of the State and is opposed to all organized government, despite his testimony to the contrary.

5. That the petitioner believes in and advocates the overthrow by force or violence of the Government of the United States or of all forms of law.

6. That the petitioner believes in and advocates the unlawful damage, injury or destruction of property.

7. That based upon all the evidence and despite his testimony to the contrary, the petitioner believes in and advocates sabotage.

8. That the petitioner has written, circulated, printed, published and displayed; and has caused to be circulated, printed, published and displayed; and has had in his possession for the purpose of circulation, publication or distribution articles, books, magazines and newspapers advocating:

(a) The overthrow by force, violence, or other unconstitutional means of the Government of the United States or all forms of law.

(b) The unlawful damage, injury or destruction of property.

(c) Sabotage.

(d) The opposition to all organized government.

9. That petitioner is not attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States.

10. That petitioner is unwilling to take the oath of allegiance as required by law.

 11. That the Industrial Workers of the World comes within the proscription of Section 313 (8 U.S.C.A. § 1424) of the Immigration and Nationality Act in that it:

(a) Advocates and teaches the opposition to all organized government.

(b) Advocates and teaches the overthrow by force and violence or other unconstitutional means of the Government of the United States or of all forms of law.

(c) Advocates and teaches the unlawful damage, injury or destruction of property.

(d) Advocates and teaches sabotage.

(e) Writes, publishes and causes to be written, published, circulated, distributed, printed and displayed, and knowingly has in its possession for the purpose of circulating, publishing, distributing or displaying, written and printed matter advocating or teaching:

(1) The overthrow by force, violence, or other unconstitutional means, of the Government of the United States or of all forms of law.

(2) The unlawful damage, injury or destruction of property.

(3) Sabotage.

(4) The opposition to all organized government.

## CONCLUSIONS OF LAW

1. That the petitioner has failed to establish that he does not come within the class of persons whose naturalization is prohibited by Section 313(a) (1), (4), (5), (6) of the Immigration and Nationality Act. (8 U.S.C.A. § 1424).

2. That the petitioner has failed to establish that he has been attached to the principles of the Constitution and well disposed to the good order and happiness of the United States.

3. That under Section 313 (8 U.S.C.A. § 1424) and Section 307(a) (8 U.S.C. § 707(a)[2]), the petitioner may not be naturalized.

4. That the petitioner is unable to take the oath of allegiance to the United States.

5. That the petition for naturalization should be and is denied.