George Albert SCYTHES, Petitioner,

v.

Richard L. WEBB, Officer in Charge, Immigration and Naturalization Service, United States Department of Justice of Milwaukee, Wisconsin, Respondent.

No. 13580.

United States Court of Appeals Seventh Circuit.

Sept. 13, 1962.

1953, 345 U.S. 544, 552, 73 S.Ct. 848, 97 L.Ed. 1232.

Leonard S. Zubrensky, Milwaukee, Wis., Melvin L. Wulf, New York City, for petitioner.

James B. Brennan, U. S. Atty., Milwaukee, Wis., James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for respondent.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner, George Albert Scythes, seeks review under the provisions of Section 106 of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a, of a deportation order of the Board of Immigration Appeals. The Board's order followed an appeal from a determination by a Special Inquiry Officer of the Immigration and Naturalization Service that petitioner is an alien who had been a member of an organization, the Socialist Workers Party, which advocates the overthrow of the Government of the United States by force and violence or other unconstitutional means.[1] This review is governed by Section 242(b) (4) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(b) (4), which provides in part, "[N]o decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."

Petitioner, a native and citizen of Canada, entered this country on a temporary basis in 1933. He returned to Canada in 1940 to obtain an immigration visa. On June 1, 1940 he was admitted into the United States for permanent residence.

Petitioner became a member of the Socialist Workers Party in 1939, joining the Newark, New Jersey branch of the party. In 1947 he became a member of the Milwaukee, Wisconsin branch where he remained until he quit the party in 1955.

Petitioner admitted during the hearing that he was familiar with and had read many of the publications distributed by the Socialist Workers Party; that he had served as treasurer of the Newark and Milwaukee branches; that he had served on educational committees of these branches; and that he had addressed meetings of the party in Newark. Under Section 1251(a) (6) (F)

1. Section 241 of the Immigration and Nationality Act, 8 U.S.C.A. § 1251, provides in part:
    "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who * * *
    "(6) is or at any time has been, after entry, a member of any of the following classes of aliens: * * *

    "(F) Aliens * * * who are members of * * * any organization that advocates or teaches (i) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law; * * *."

the government must establish that the alien sought to be deported not only has been a member of the organization in question, but that his membership was "meaningful" as that word is used in Rowoldt v. Perfetto, 355 U.S. 115, 78 S. Ct. 180, 2 L.Ed.2d 140. See also, Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911. We are convinced that petitioner's activities while a member of the Socialist Workers Party clearly establish that his membership was sufficiently "meaningful" to satisfy the test laid down by these cases.

■ The crucial question is the correctness of the Board of Immigration Appeals' decision that the Socialist Workers Party is an organization that advocates the overthrow of the Government of the United States by force, violence, or other unconstitutional means. Section 1251(a) (6) (F) covers membership in an organization that "advocates or teaches * * * the overthrow by force, violence, or other unconstitutional means of the Government of the United States * * · *." We believe it is significant to note that this language and that of a part of the Smith Act, 18 U.S.C. § 2385 (the federal criminal statute defining crimes for subversive activities) are practically identical. The Smith Act covers known membership in a "society, group, or assembly of persons" who "teach, advocate, or encourage the overthrow or destruction" of the United States Government "by force or violence."

While we recognize the distinction between a prosecution under the Smith Act and a deportation proceeding under Section 1251(a) (6) (F), the distinction relates not to the subversive character of the organization in question, but rather to the quantum of proof required to convict or to deport. In a Smith Act prosecution the proof must be beyond a reasonable doubt, whereas in a deportation proceeding it is sufficient if the Attorney General's finding is based on "reasonable, substantial, and probative evidence." Nonetheless, we believe the determination whether an organization is one which advocates or teaches the violent overthrow of the United States Government ought not be made by a test which is different in a deportation proceeding from that used in a Smith Act prosecution.

With this in mind, we believe that the test for deciding the question presented in the instant case must be substantially the same as that laid down in the two cases that have been decided by the Supreme Court under the membership clause of the Smith Act, Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782, and Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.E.2d 836. In Noto the Supreme Court said at 297, 81 S.Ct. at 1521:

"We held in Yates [Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356],[2] and we reiterate now, that the mere abstract teaching of Communist theory, in-

2. This case, while a prosecution under the Smith Act, was not brought under the "membership clause," but charged defendants with conspiracy to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and to organize, as the Communist Party of the United States, a society of persons who so advocate and teach.

The Supreme Court said at 318, 324, 77 S.Ct. at 1076, 1080:

"We are thus faced with the question whether the Smith Act prohibits advocacy and teaching of forcible overthrow as an abstract principle, divorced from any effort to instigate action to that end, so long as such advocacy or teaching is engaged in with evil intent. We hold that it does not.

"The distinction between advocacy of abstract doctrine and advocacy directed at promoting unlawful action is one that has been consistently recognized in the opinions of this Court * * *." * * *

" * * * the Smith Act reaches only advocacy of action for the overthrow of government by force and violence. The essential distinction is that those to whom the advocacy is addressed must be urged to *do* something, now or in the future, rather than merely to *believe* in something."

cluding the teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action. There must be some substantial direct or circumstantial evidence of a call to violence now or in the future which is both sufficiently strong and sufficiently pervasive to lend color to the otherwise ambiguous theoretical material regarding Communist Party teaching, and to justify the inference that such a call to violence may fairly be imputed to the Party as a whole, and not merely to some narrow segment of it.

\* \* \* \* \* \*

"But it should also be said that this element of the membership crime, like its others, must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share."

The government's evidence before the Special Inquiry Officer consisted of the testimony of three witnesses and a number of documentary exhibits such as pamphlets, tracts, and books circulated by the Socialist Workers Party. The documentary exhibit principally relied upon by the government is the "Declaration of Principles and Constitution of the Socialist Workers Party." Government counsel, during oral argument, admitted, however, that he could point to no passage in the "Declaration" which advocated the violent overthrow of the Government. Passages in the document, such as those recited in Dunne v. United States, 8 Cir., 138 F.2d 137, are ambiguous and abstract.[3] We think that the characterization of the Socialist Workers Party as an organization advocating violent overthrow of the Government on the basis of such passages would be a characterization based on what was not said rather than what was said.[4]

Petitioner contends that the other evidence, aside from the "Declaration," in-

3. An example of the language contained in the "Declaration" and cited in Dunne at 148 follows:

"'The belief that in such a country as the United States we live in a free, democratic society in which fundamental economic change can be effected by persuasion, by education, by legal and purely parliamentary methods is an illusion' \* \* \*. 'The fundamental instruments of the workers' struggle for power cannot be the existing institutions of the governmental apparatus, since these represent basically the interests only of the capitalistic minority' \* \* \*. 'Whenever the revolutionists find themselves in a Labor Party, they will stand at each stage for those concrete policies and actions which sum up a progressive and class perspective; for complete breaks with the capitalist parties and no support of candidates on capitalist tickets; for *direct mass actions and avoidance of limitations to parliamentary activities*; \* \* \*'. 'While relying primarily on mass actions, propaganda and agitation as the means for furthering its revolutionary aim, the Party will also participate in electoral campaigns, though *at all times contending against the fatal illusion that the masses can accomplish their emancipation through the ballot box*' \* \* \* (italics added)."

In Dunne, James P. Cannon, together with seventeen other leaders or members of the Socialist Workers Party were convicted of conspiring to advocate the overthrow of the Government of the United States by force. This conviction was based on a violation of the Smith Act. The government concedes that this case is not res judicata to this deportation proceeding.

4. It may be noted, parenthetically, that the State of Wisconsin specifically prohibits political parties which advocate the violent overthrow of the government from appearing on election ballots. 6.85(1) Wis.Stat. (1959). Yet, petitioner presented proof that candidates representing the Socialist Workers Party ran for high public office in Wisconsin on several occasions.

cluding the documentary exhibits and testimony of the witnesses, does not justify his deportation because it does not establish that there is such discipline within the party organization that the views of certain party leaders and pamphlet writers can be properly attributed to the organization itself. In other words, petitioner contends the government has failed to provide the essential proof that there is a party line within the Socialist Workers Party.

All three government witnesses had been members of the Socialist Workers Party (the period of their membership was from approximately 1938 to approximately 1941) and all identified James P. Cannon as the head of the Socialist Workers Party during the period of their membership. Witnesses Bartlett and Zygmont testified that in their opinion the Socialist Workers Party, during the period of their membership, advocated the overthrow of the Government of the United States by force or violence. Witnesses Black and Bartlett identified the government's documentary exhibits as representing the views of the Socialist Workers Party.

Witnesses for petitioner, Boulton and Dobbs, also members of the Socialist Workers Party, testified that the "Declaration" represented the views of the party, and Dobbs further testified that when James P. Cannon was the head of the party his expression of views represented the views of the party.

The Supreme Court has stated that it is difficult to attribute a party line to a political organization. In Schneiderman v. United States, 320 U.S. 118 at 154, 63 S.Ct. 1333 at 1351, 87 L.Ed. 1796, the Court said:

"Political writings are often over-exaggerated polemics bearing the imprint of the period and the place in which written. * * * Every utterance of party leaders is not taken as party gospel. And we would deny our experience as men if we did not recognize that official party programs are unfortunately often opportunistic devices as much honored in the breach as in the observance."

Evidence that there is no party line within the Socialist Workers Party is contained in the testimony of the government's own witnesses. Witness Black testified that the party possessed local autonomy and freedom of action; that the party was a democratic institution whose goal was world socialism, but that there was no uniformity of opinion on how the goal should be accomplished and no punitive action taken against those who failed to follow the directions of those in authority. Witness Bartlett testified that the Communist Party criticized the Socialist Workers Party on the ground that it was not a revolutionary party. Witness Zygmont, who had also been a member of the Communist Party, testified to the effect that compared to the Communist Party the Socialist Workers Party in the United States was a small and undisciplined group.

The fact that James P. Cannon was recognized to be the leader of the party and that his views were recognized as the views of the party by some members is insufficient evidence that his views or such recognition by some members constituted a party line. The testimony of the government witnesses heretofore set out indicates that the views of the party leaders, while possibly persuasive, had no binding influence on the members.

■ Accordingly, we find no substantial evidence in the record that the Socialist Workers Party advocates or teaches by its "Declaration of Principles and Constitution" the violent or forceful overthrow of the Government of the United States within the meaning of the test laid down by Scales and Noto. Furthermore, there is no substantial evidence showing that there is a party line within the organization which advocates or teaches such overthrow.

The order of deportation is reversed.

KNOCH, Circuit Judge, concurs in the results.