**INDUSTRIAL WORKERS OF the WORLD, etc., et al., Appellants,**

v.

**Ramsey CLARK, Attorney General of the United States, Appellee.**

**No. 20586.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 21, 1967.

Decided Sept. 26, 1967.

Danaher, Circuit Judge, dissented.

Mr. Marshall Patner, Chicago, Ill., for appellants. Mr. William W. Brackett, Chicago, Ill., also entered an appearance for appellants.

Mr. Kevin T. Maroney, Atty., Dept. of Justice, with whom Asst. Atty. Gen. J. W. Yeagley, Mr. George B. Searls and Mrs. Lee B. Anderson, Attys., Dept. of Justice, were on the brief, for appellee.

Before DANAHER, LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case presents problems arising out of the establishment and maintenance of the so-called "Attorney General's List." Relying on various federal statutes, President Truman in 1947 issued Executive Order No. 9835, 12 Fed.Reg. 1935, establishing an Employees Loyalty Program in the Executive Branch of the Government. By this order the Attorney General was directed to furnish the Loyalty Review Board with the names of each foreign or domestic organization or association which he, after "appropriate investigation" designated as fascist, communist, totalitarian, or otherwise subversive. Thereupon the Board was instructed to disseminate this information to all federal departments and agencies. In 1949 the Attorney General cited the Industrial Workers of the World (IWW), appellant herein, as such an organization seeking to alter the form of government of the United States by unconstitutional means. See 14 Fed.Reg. 2371 (1949).

On April 27, 1953 President Eisenhower revoked Executive Order No. 9835, replacing it with Executive Order No. 10450, [18 Fed.Reg. 2489]. This new order somewhat refined notions of loyalty to make "security" the ultimate aim of the program. The new order continued the directive that the Attorney General compile and maintain a list of subversive organizations, but provided that he was to communicate this information directly to heads of departments and agencies. Pursuant to this directive, the Attorney General on April 29, 1953, 18 Fed.Reg. 2741, redesignated the organizations previously listed under the prior Executive Order, including the IWW. The Attorney General accompanied the redesignation with regulations setting forth procedures for prompt challenge to a proposed listing. Under the new regulation any organization whose listing was carried over from the previous determination was given ten days from the effective date of Executive Order No. 10450 (May 27, 1953) to file a written notice that it contested such listing. See 28 C.F.R. § 41.1(a) (1967). Failure to file such a notice of contest was declared to be "an acquiescence in such designation." [1]

The IWW made no such objection within that ten day period. Although the IWW kept up correspondence with the Attorney General intermittently over the years protesting its inclusion in the Attorney General's List, no court challenge to the organization's listing was made until the present action was insti-

---

1. Membership in a listed organization is a factor used in weighing qualifications for federal employment, federally financed housing, and other federally created benefits. (JA 27) There is also a suggestion that because of the wide circulation of the list, it has had some impact on state and private employment and benefits. (JA 4)

tuted in 1965. The Attorney General then raised the defense of laches, contending that the exchange of letters over twelve years did not keep alive any objection to the 1953 listing. The District Court dismissed the action on the ground that the administrative remedies available with respect to the 1953 listing had not been exhausted.

■ We do not consider the merits of the IWW's claims that the procedures for listing allegedly subversive groups fatally offend the First and Fifth Amendments. Compare Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), with National Lawyers Guild v. Brownell, 96 U.S.App.D.C. 252, 225 F.2d 552 (1955), cert. denied 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956), and Association of Lithuanian Workers v. Brownell, 101 U.S.App.D.C. 73, 247 F.2d 64, vacated as moot, 355 U.S. 23, 78 S.Ct. 93, 2 L.Ed. 2d 67 (1957). We conclude that the failure to object within the allotted period to the 1953 listing precludes any judicial determination at this time that that listing was unlawful.

A 10-day period would be too "cabined and confined" to suffice as the exclusive opportunity for asserting a constitutional right available to a body of citizens whose circumstances do not encourage initiative and enterprise. Lane v. Wilson, 307 U.S. 268, 276, 59 S.Ct. 872, 83 L.Ed. 1281 (1939). But it was reasonable for the Attorney General to assume that different considerations were properly applicable to persons already "organized" for expression of political views, if not more comprehensive purposes, and presumptively acquainted with rights and remedies.[2] In this context we note that since the IWW was a re-listed organization, it in fact had a period of 38 days to file its objection,[3] and further note that

although the IWW has objected to the procedures on the ground that they do not require actual notice of listing, there is no contention that the IWW was not in fact aware of the Attorney General's determination to continue listing it as a subversive organization in time to raise a contest.

That, however, is not the end of this case. Although the regulations issued on the heels of Executive Order 10450 provide in considerable detail for the mechanics of notice and hearing when a listed organization raises a timely challenge to the listing, within ten days of its effective date, see 28 C.F.R. §§ 41.1–.11 (1967), there is not a public suggestion, how, if ever, a listed organization may subsequently exonerate itself, if perchance it did not object within the ten day period. The stipulation of undisputed facts entered into between the parties recites:

8. Because neither the Executive Order nor the Rules issued thereunder provide a procedure for an organization's removal from the list of those designated, the defendant [Attorney General] has informally added to the above Rules the concept of administrative review upon a showing of a material change in the character of the organization or newly discovered material evidence. (JA 23)

The Attorney General assures us that "although the regulations do not provide a procedure for removing an organization from the list, defendant would, of course, afford further administrative proceedings to a designated organization upon a showing of a material change in the character of the organization or any substantial new and material evidence." (Brief for Appellee at 2.) The Attorney General correctly characterizes this technique of administrative review and re-

---

2. Cf. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

3. Executive Order No. 10450 was promulgated on April 27, 1953, to become effective thirty days later on May 27, 1953. On the 29th of April, the Attorney General published in the Federal

Register, 18 Fed.Reg. 2619, the rules of procedure for the federal employee security program. These rules announced that previously listed organizations could file contests to relisting within ten days after the (May 27) effective date of the Executive Order.

consideration as "informal," since its origin and establishment appear only in correspondence with listed organizations. The decision as to what constitutes a "material change in the character of the organization" or "substantial and new material evidence" is apparently made ex parte by the Attorney General, and he has articulated no standards to guide his judgment on such questions.

We note that because of its failure to raise an objection to the 1953 listing within the period specified in the 1953 regulation, the IWW has never been advised what the substantive basis was for the determination to list it as a subversive organization. In such a context, a bare requirement that a listed organization demonstrate to the Attorney General's satisfaction that there is "new" material evidence or a material "change in the character" of the organization emerges as something less than a wholly satisfactory administrative remedy.

We need not pass at this point on whether the informal review the Attorney General assures us he makes available in this context is adequate.[4] The IWW does not raise that precise challenge. This is an area where First Amendment guarantees of freedom of speech, press, and political association are involved, however, and we consider this issue open in the further proceedings which we are ordering.

In any event, in this case we find that the IWW has resorted to what has thus far appeared as an administrative remedy, and despite the silence of the District Court on this aspect of the case, the IWW has, we think, timely raised a justiciable objection that the Attorney General's denial of relief was arbitrary.

We have referred to an irregular course of correspondence between the IWW and the Attorney General, dating at least from January 1954, in which the IWW continued to object to its listing and the Attorney General consistently relied on the IWW's default in failing to protest within ten days of the listing in 1953. Of particular significance is the exchange of letters that began on December 23, 1964, when counsel for the IWW wrote to the Attorney General seeking information about the steps necessary to secure removal of the organization from the subversive list. On January 6, 1965, the Assistant Attorney General, Internal Security Division, responded that it seemed "extremely improbable that an organization could be properly delisted upon a review by the Acting Attorney General if his review were limited to a mere reconsideration of the information considered by Attorneys General [Tom C.] Clark, McGrath and Brownell at the time of their respective decisions to designate the organization." The letter proceeded to advise the IWW once more though that "a petition of the organization requesting delisting will be given careful study and consideration if it presents new information providing a reasonable basis for considering such delisting." (JA 29–30)[5]

Then on February 13, 1965, the IWW submitted a letter styled "Petition" formally requesting delisting, or in the alternative seeking at least a hearing in support of the petition. The principal thrust of the petition, evidently designed to meet the Attorney General's precondition of "new material evidence" respecting the character of the organization was reliance on the May 21, 1964 decision of the Seventh Circuit in the case of Thompson v. Immigration and Naturalization Service, 332 F.2d 167, reversing In re Thompson's Petition, 209 F.Supp. 494 (N.D.Ill.1962). There the District Court had rejected a naturalization petition on the ground that the petitioner was a member of the IWW, and that the IWW was an organization advocating the

---

4. *Compare* Silver v. McNamara, 111 U.S. App.D.C. 334, 296 F.2d 591 (1961).

5. This presumably was in the same vein as the Attorney General's informal assurance that "you may * * * submit for review any information you deem pertinent concerning the policies and objectives of your organization at this time." (Letter dated July 7, 1956, JA 23.)

alteration of the American government by unconstitutional means. The District Court sought to support its view with copious references to the literature of the IWW. The Seventh Circuit reversed this finding with the terse notation that it was "clearly erroneous" (332 F.2d at 170), relying on its rejection of a similar finding as to the Socialist Workers Party in Scythes v. Webb, 307 F.2d 905 (7th Cir. 1962).[6] Since the court also rejected a separate point argued in the alternative by the Government, it reversed the order denying naturalization.

As support for its request in the alternative for a hearing on the merits of the original listing, the IWW claimed that the January 6, 1965 letter from the Assistant Attorney General inviting submission of new evidence on the validity of the listing constituted a waiver of the ten day limitation period.

Shortly after this Petition was filed, the Attorney General denied all relief. His letter referred to the earlier assurances that new information providing a reasonable basis for delisting would be given careful consideration, but concluded: "[T]he information contained in the petition * * * which you forwarded * * * does not warrant review by this Department. In addition the case of Thompson v. Immigration & Naturalization Service, 332 F.2d 167 ([7 Cir.] 1964), is not in point since it relates to a petition for naturalization by an individual. In this connection it should be pointed out that the Socialist Workers' Party remains an organization designated pursuant to Executive Order 10450, even though in a deportation proceeding Scythes v. Webb, 307 F.2d 905 (1962), the United States Court of Appeals for the Seventh Circuit found, under the standard before laid down, that there was no substantial evidence in the record that the Socialist Workers' Party advocates or teaches the violent and forceful overthrow of the Government of the United States."

On May 4, 1965, the IWW finally resorted to the courts. In addition to urging that the court declare the original listing void on the ground that it violated restrictions on the delegation of powers and offended constitutional guarantees of notice and hearing, it insisted that the Attorney General had waived the ten-day requirement, and—importantly—averred that the Attorney General's rejection of the February 12 petition was "arbitrary and capricious." The IWW added that it had exhausted its administrative remedies, and requested the court to order the Attorney General to grant a hearing, grant an injunction against further listing, and provide "such other and further relief as is just."

In his answer, in addition to raising the defenses of laches and failure to exhaust administrative remedies, the Attorney General denied the charge of arbitrary and capricious rejection of the petition (JA 17). In its motion for

---

**6.** In the *Scythes* case the Seventh Circuit held that ambiguous and abstract passages in party literature do not suffice to characterize an organization as one advocating the violent overthrow of the government. The court relied on Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), and Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961), stating that although the government's burden of proof was less in a deportation case (like that of *Scythes*) than in a prosecution under the Smith Act, there was no material difference in regard to the test for determining whether an organization advocates or teaches the violent overthrow of the government.

In *Thompson* the court did not rest its decision on the ground of the hearing or peculiar burden resting on the government in naturalization cases but rather, as appears from its reference to *Scythes*, on the ground of error in the ultimate standard used in the Department of Justice, i. e. by the naturalization examiners, and adopted by the District Court, for determining whether an organization advocated the violent overthrow of the government. One judge would have affirmed the denial of naturalization on another ground; he did not dissent from the court's ruling as to the nature of the IWW.

judgment on the pleadings, the IWW repeated its contention that the Attorney General's "action was arbitrary and capricious" in that he "summarily refused the petition and evidence." In his counter motion for summary judgment or dismissal, the Attorney General alleged that the decision in *Thompson* "is entirely irrelevant and immaterial to the designation of the plaintiff organization under Executive Order No. 10450." (JA 20) Once more, in opposing the Attorney General's motion, the IWW averred that "specific arbitrary and capricious actions of the defendant include: Specific refusal to consider the decision * * * in Thompson v. Immigration & Naturalization Service, * * * the only proper relevant determination ever made of the character" of the IWW.

The District Court recognized that some broad constitutional issues were involved, but held there was no occasion to reach them. As the sole explanation for the denial of the IWW's prayers for relief and the grant of the Attorney General's motion for summary judgment, the court ruled that "by failing to exhaust its administrative remedy [of contesting the listing within ten days] the plaintiff has precluded itself from pursuing a judicial remedy."

We approve of the denial of relief premised on alleged infirmities in the 1953 listing of the IWW as a subversive group. In addition to the failure to exhaust administrative remedies,[7] the Attorney General raised the equitable defense of laches, which includes the twofold elements of reasonable delay and likelihood of prejudice to the defendant. Here it was set forth in the statement of facts as to which there is no material dispute that the IWW had "no legal excuse for their delay of twelve years in seeking a judicial determination of their allegations relative to their designation under Executive Order No. 10450" and that it "is reasonable to presume that entertaining this suit would give rise to numerous similar suits by others of the nearly three hundred organizations designated under Executive Order No. 10450." It is also reasonable to assume that this delay would severely complicate the ability to adduce evidence available when the original determination was made.

The District Court accompanied its judgment with a brief, oral statement that appellant's failure to exhaust its administrative remedies precluded pursuit of a judicial remedy. We have approved the refusal to provide judicial relief when a listed organization deliberately bypassed administrative channels. See National Council of American-Soviet Friendship v. Brownell, 100 U.S.App. D.C. 116, 243 F.2d 222 (1957). We cannot say it was abuse of discretion for the District Court to refuse to consider the IWW's challenges to its 1953 listing.

That determination, however, does not dispose of the case, and herein lies the District Court's error. To say that the IWW can no longer demand a judicial hearing on the validity of the 1953 listing is a far cry from concluding that the organization is eternally ousted from resort to the courts for other, subsequent complaints. It is settled that justiciable rights are involved here. See Joint Anti-Fascist Refugee Comm. v. McGrath, *supra*. First Amendment rights are at stake. In such a situation we think the chief law officer of the United States is under a legal duty to adhere to minimal standards of fairness and reasonableness when he acts.

Even where an organization failed to exhaust the administrative remedy provided by the regulation, this court concluded that an additional period should be provided to an organization that had made clear its non-acquiescence in the listing. Joint Anti-Fascist Refugee Committee v. Brownell, 94 U.S.App.D.C. 341, 215 F.2d 870 (1954).

Here we have another issue—the action on appellant's petition for delisting in the light of developments subsequent to 1953, namely the Seventh Circuit's

---

7. *See* JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 450–58 (abr. ed. 1965).

1964 ruling in *Thompson*. That decision is not necessarily dispositive of the complaint before us. The Attorney General asserts that it is "entirely irrelevant and immaterial" to the designation of the IWW, but this is the determination that the organization claims is arbitrary and wishes a court to examine. It argues in the alternative that the *Thompson* decision provides at least sufficient momentum to entitle it to an administrative hearing on its prayer for discontinuance of the listing.

■■ The District Court withheld consideration on the merits of the claim that the refusal was arbitrary, but we believe the IWW was entitled to judicial consideration of that issue. This entails at least a careful analysis of the *Thompson* litigation. Ultimate resolution may come to require some consideration of the factual background for appellant's designation, for this may be decisive in determining whether it was indeed capricious to term the *Thompson* ruling "entirely irrelevant." The problem is not a simple one. It is clear enough that reasonable consideration must be given to new evidence. Apparently the Attorney General would also agree that reasonable consideration must be given to newly announced legal doctrine. Such consideration is available in a court notwithstanding an earlier decision in the same controversy put forward as the law of the case.[8] The *Thompson* decision is a third category— the appearance of a new judicial determination of the ultimate legal significance of relevant evidence, a determination that may embody both factual inferences and changing legal concepts.

We do not now intimate any view on the merits of this allegation other than to hold that it adequately raises an issue that the District Court ignored. Since 1953, when the last deliberate decision to list the IWW as a subversive group was made, there has been a considerable development in public and judicial attitudes toward control of subversives.[9]

■■ While none of the decided cases precisely involves the issues the District Court is to consider on the remand, their approach may have some relevance in determining whether the Attorney General's conduct must be held arbitrary and capricious. We think the District Court, having judicial jurisdiction,[10] should

---

**8.** Naples v. United States, 123 U.S.App. D.C. 292, 359 F.2d 276 (1966).

**9.** *See e. g.*, Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) ; Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966) ; United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965) ; Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed. 2d 992 (1964) ; Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961) ; Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961) ; Communist Party v. SACB, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) ; Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) ; Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

**10.** The Attorney General, challenges, *inter alia*, judicial jurisdiction, on the principle that this is in effect an unconsented-to suit against the United States. That issue was settled in the IWW's favor by *Joint Anti-Fascist*. The Attorney General argues that the IWW has pointed

to no statutory provision consenting to suit against the Attorney General in his official capacity. Although we agree that general grants of judicial jurisdiction are not usually construed as consent to suit, the IWW in its complaint squarely relied on Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (Supp. II, 1965–66), which accords a right to judicial review to "[a] person suffering legal wrong because of agency action" (§ 702). "Agency" is defined as "each authority of the Government of the United States," except for irrelevant exceptions (§ 701(b) (1)). In the absence of any specified form of proceeding, review may be had by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction" (§ 703). And Section 706 broadly directs the courts, to the extent necessary, to decide questions of law, interpret constitutional and statutory provisions, "compel agency action unlawfully withheld or unreasonably delayed," and hold unlawful and set aside agency action found to be "arbitrary, ca-

have the first opportunity to address itself to this question, with such further amplification by the parties as the court in its sound discretion deems advisable.

The order granting summary judgment in favor of the Attorney General is affirmed insofar as it declines to review the 1953 listing. In regard to appellant's claim that the Attorney General acted arbitrarily on its 1965 petition for delisting, the order is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

So ordered.

DANAHER, Circuit Judge (dissenting):

To the extent that my colleagues find no error in the order under review I would agree, but there I would stop. I think this case should not be remanded for any purpose.

Listed pursuant to the 1947 Executive Order No. 9835, and further listed after the 1953 Executive Order No. 10450, these appellants at neither time took the steps available to them to contest their designation. No timely challenge was levied against the orders or the regulations issued pursuant thereto. No administrative relief was sought. No judicial relief was asked. My colleagues acknowledge, as they must, that the District Court did not abuse its discretion in rejecting the appellants' present attack upon designation following Executive Order 10450, National Council of American-Soviet F. v. Brownell, 100 U.S.App. D.C. 116, 243 F.2d 222 (1957).

But, some twelve years having elapsed since the designation, my colleagues say they can now discern that a justiciable controversy has emerged. Although no allegations had been submitted to the Attorney General to suggest a "material change in the character of the organization," and there had been no showing of "newly discovered material evidence," or why it is only now "newly discovered," my colleagues would cause this case to be reopened. Neither in their correspondence nor in the record had the appellants proffered compliance with the basis upon which the Attorney General said he would be moved to act.

Let them, even now, not on their own terms but on his, meet the conditions upon which the Attorney General said *he* would entertain reconsideration. This is no case for this court's intervention on the record now before us.

I dissent.[1]

---

pricious, an abuse of discretion, or otherwise not in accordance with law." If consent to suit there must be consent to suit there here is.

1. And insofar as the majority seems to find that Thompson v. Immigration & Naturalization Service, 322 F.2d 167 (7th Cir. 1964) has somehow infused new life into

the defunct claim here resurrected, I suggest a mere reading of the opinion will demonstrate that a completely distinguishable issue was there presented. I agree with the Attorney General's conclusion that what was there decided in 1964 was "entirely irrelevant" to the designation of the appellant organization in 1953.